[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON RESPONDENT'S MOTION FOR RECUSAL
The respondent mother, through her attorney, Douglas Crockett, filed a motion seeking a recusal of Judge Driscoll, Presiding Judge, Superior Court for Juvenile Matters at Montville. Judge Driscoll referred the motion to this Court for argument and decision.
The respondent claims that the Court (Driscoll, J.) allowed opposing counsel to file ex parte motions and communicate with the Court ex parte, thus creating the appearance of lack of impartiality. Specifically, the respondent claims that counsel for the Department of Children and Families (DCF) moved the Court on August 26, 1998 ex parte to honor the request of counsel for the child (Attorney Heck) to be allowed to withdraw as counsel and have a guardian ad litem appointed. On that date the Court indicated its desire to keep Attorney Heck involved in the case because of his long history with the file, and appointed him guardian ad litem. No one other than counsel for DCF was present on that date. The following week, on September 1, 1998, counsel for all parties were present in the courtroom to address the request of Attorney Heck, including counsel who now (January 29, 1999) makes this Motion for Recusal. Attorney George Kennedy addressed the Court, Driscoll, J, at the hearing of September 1, 1998:
MR. KENNEDY: I would inquire, Your Honor. The paper — I don't have it in front of me — I was shown earlier this morning — it indicates that I had an CT Page 5862 appointment as the attorney and Mr. Heck as the guardian. Given that Mr. Heck has the longer-term relationship — given that, this is my first time approaching this matter. Given that he has been involved for a much longer period of time, I would anticipate that the appointment would be reversed. If the Court chooses it to remain that way, it would be fine, but I just came on board now.
 THE COURT: I am very concerned about any best-interest findings or recommendations that have been made here. I would ask that Attorney Heck stay on as the guardian ad litem and that you stay on as counsel. Now that is conditioned on one thing — Attorney Heck is there anything that has taken place in your representation of Sam that would implicate you in terms of any attorney-client privilege?
 MR. HECK: No, Your Honor. I have had no privileged conversations with Sam. In each instance there has been a third party there and the matters he has discussed with me have been such that they would not be called privileged. And if I could just note for the record because in case it becomes an issue later on, we might as well resolve it immediately and that is — upstairs, we had a meeting about some of the questions that were to go to the evaluator. And Attorney Crockett feels that I should not be the guardian ad litem and I feel, would prefer to have somebody else and if he wishes to pursue that issue with the Court feel that this would be the appropriate time, rather than somewhere down the road.
 MR. WHOLEAN: Without speaking, Your Honor, to the direct relationship here, just by way of observation and in a general way, it would seem that the more sensitive position would be that, with the guardian ad litem — where counsel has had a long history, it would seem that that individual should continue as guardian ad litem and not as an advocate, where the dichotomy results.
MR. CROCKETT: Your Honor, since I was quoted, my concern was that this child is eight years old, severely emotionally disturbed, and is extremely difficult to communicate with. And I think even the allegations in this case indicate that what he is called is not a reliable reporter. I would urge to have someone with experience in communicating. And training — professional training in communicating with children this young and severely emotionally impaired. Somebody with a social worker training or a licensed clinical psychologist who can sit down and get through to the truth of the situation with Sam. CT Page 5863
 I meant no reflection on the attorney who has been appointed. It has nothing to do with his qualifications as an attorney. But a perceived need for people with professional training to communicate with young children when they need representation.
[Extensive discussion before the Court among Attorney Crockett, Attorney Heck, Attorney Kennedy and Attorney Wholean then took place about the role of the guardian ad litem and the role of counsel for the child. At the conclusion of the discussion Judge Driscoll addressed all parties:]
 THE COURT: Child's counsel is a lawyer and is to treat the child as a client. They are entitled to question witnesses. They are entitled to comment upon the evidence in the same manner as an attorney for an adult client would comment upon the evidence. Although the guardian ad litem is different. Their role is to assist the Court and make recommendations in the best interest of the child. Now I can appreciate that Samuel may be a very difficult client to work with and for and that he has special needs in terms of communication skills. There is nothing preventing counsel, if they can identify someone who can assist them in speaking with Sam. Seeking permission to retain that person, just as you would if Sam did not speak the English language. Then you would come to the Court and request the services of an interpreter.
 So — I'm also mindful that we might have a great deal of court business. And I would find it entirely unlikely that a clinical psychologist would want to be running back and forth from Court to report as Sam's guardian ad litem on all the interim matters that take place in processing a juvenile case. So I'm going to leave things status quo, . . . [the Court then went on to take up a number of other issues in this case].
Transcript of September 1, 1998
Although Mr. Crockett's position might be considered to be an objection to the Court's action and overruled by the Court's decision, at no time was Mr. Crockett denied the right to argue for his client's position. This was not an "ex parte" hearing. Mr. Crockett argues for a non-lawyer guardian ad litem and the Court found that an attorney would be more appropriate. Mr. Crockett never objected to Mr. Heck, per se, being guardian ad litem. He also never raised any objection to any ex parte issue at the time. In fact, the Court's entertainment of arguments for and against the appointment of Mr. Heck as guardian ad litem was gratuitous since the Court has the absolute right to appoint a CT Page 5864 guardian ad litem. C.G.S. § 45a-132. Additionally, respondent mother had no standing to challenge this appointment nor the appointment of counsel for Samuel. Taff v. Bettcher,35 Conn. App. 421 (1994); Lowe v. Lowe, 47 Conn App. 354 (1997). The Court in this case chose to involve all counsel and explain its reasons for its actions on the record.
Respondent mother further claims that on September 4, 1998, Mr. Wholean, counsel for DCF, advised Mr. Crockett that he sought to have the Court appointed evaluator removed from the case, although the method pursued is not clear. However, Mr. Wholean advised Mr. Crockett at that time that the Court would not do so. While it is not clear what, if anything, happened here, it is clear that Mr. Crockett's client was not prejudiced because the Court took no action.
On September 5, 1998, Mr. Wholean advised Mr. Crockett that he was filing a written motion to accomplish the same thing because Mr. Crockett had communicated with the court appointed evaluator and that he would try to have it heard that afternoon. Attorney Wholean then advised Attorney Crockett that the judge refused to hear it that day in fairness to Mr. Crockett and that it would be heard on September 10, 1998. On September 10, 1998, before Mr. Wholean could present his argument, the evaluator resigned and the sole task for the day was to appoint a replacement, which the Court did without objection from Mr. Crockett, and with whose appointment
Mr. Crockett agreed at the time.
On October 2, 1998, respondent mother, with the advise and assistance of Mr. Crockett, entered a plea of nolo contendere to the allegation that Samuel is an uncared for child in that he requires specialized care for his physical, emotional and mental conditions and that her home cannot provide that specialized care. There followed an extensive and thorough canvas of the respondent mother's understanding of the plea and its consequences and an ascertainment of the voluntary nature of its entry. Prior to the entry of the plea, Mr. Crockett withdrew his July 28, 1998 Motion to Dismiss which was based upon issues not related to this Motion for Recusal. On October 2, 1998, no objection was raised by Mr. Crockett to any of the proceedings which had transpired thus far in the case, including any challenge to the right of Judge Driscoll to preside over the case. CT Page 5865
According to Petitioner's Memorandum of Law dated April 22, 1999, the new evaluator's report "most critical to mother" was received by all parties on January 20, 1999. On January 21, 1999 with all counsel (except Attorney Kennedy, attorney for Samuel who had been excused to report to another court after making his position known to all counsel and the Court) present in the courtroom, the Court again entertained Mr. Crockett's motion to disqualify the guardian ad litem and ruled that the issue had already been decided and was not raised at the time of the plea and disposition on October 2, 1998. Of significance in ruling on this motion is the Court's observation:
 THE COURT: I believe at the time I asked Attorney Heck, and I am going to repeat it for the record. Attorney Heck, did you have a confidential communication with Sam?
 MR. HECK: No, Your Honor, I did not. And I stated it on the record previously.
MR. CROCKETT: Your Honor, we believe that.
[In response to a direct question from this Court hearing the Motion for Recusal, counsel's partner, with counsel at his side, stated to this Court that they did believe Attorney Heck, but offered no proof or evidence that Attorney Heck was not telling the truth.]
 The Court, Driscoll, J., having heard Mr. Crockett's statement that "we believe that", continued:
 THE COURT: The motion is denied. I am not going to bother with the transcript. We went into this and you are trying to sandbag this attorney. You knew on the date of this — of disposition of this prior relationship with the child, and for you to have waited and wasted the Court's time because mother and you disagree with his position as guardian ad litem is unacceptable. The motion is denied.
Transcript of January 21, 1999
Attorney Crockett then filed an oral motion for recusal citing "this ex parte hearing and motion was granted" as the basis for the motion. The ex parte hearing he was addressing was the August 26, 1998 request of Attorney Heck transmitted by Attorney Wholean to be relieved of his role as attorney for the CT Page 5866 child which the Court heard with all parties present on September 1, 1998 when Attorney Heck was appointed guardian ad litem. Mr. Crockett then went on to say, "This motion, as nearly as I can tell, is one of either six or seven ex parte motions that have been heard in this case." (Transcript of January 21, 1999, page5.) —
This Court finds that no such thing occurred.
Thereafter, as part of the January 21, 1999 hearing, following considerable discussion about the transcripts, Judge Driscoll reversed his denial and reserved decision until the transcripts could be obtained. Nothing in this action was prejudicial to the respondent mother but was, in fact, responsive to her request through counsel, although, as noted above, she had no standing to challenge Judge Driscoll's appointment of a guardian ad litem in the first place. The Court was acting above and beyond the call of fairness to all parties. On January 29, 1999, Attorney Crockett filed his written Motion for Recusal which is the subject of this Memorandum of Decision.
The Code of Judicial Conduct, Canon 3(a)(4) reads in pertinent part:
 ". . . A judge shall not initiate, permit or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
 (A) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
 (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
 (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond."
Connecticut Practice Book, Rev. 1998.
This Court finds that Judge Driscoll comported with this section meticulously, giving every party, including respondent mother and Attorney Crockett, an opportunity to be heard on the issue of the appointment of a guardian ad litem, the only issue CT Page 5867 to come out of the August 26, 1998 court session. It was done in a circumspect and timely fashion on September 1, 1998, when, curiously in light of the instant motion, no objection to the appointment was voiced nor motion for recusal heard.
Respondent mother, through Attorney Crockett, also contends that by allowing counsel for DCF to voice an attempt to disqualify or replace the court-appointed evaluator to the judge at some point not clear from the record, which the judge rejected, the judge acted "ex parte" and, therefore, should be recused. It is difficult to imagine how this appropriate action (which resulted in counsel for DCF filing a written motion to do the same thing) lends to the appearance in partiality or impropriety.
In order for the respondent mother to succeed in this motion, she must show that the judge has failed to exhibit either the appearance or the existence of impartiality in his actions or both thus leading a reasonable person to believe that such impartiality might not be objectively evident from the record or circumstances surrounding the proceedings. Nothing in the record of this case supports the claim that Judge Driscoll was or gave the appearance of being partial.
Although the petitioner correctly claims that the respondent mother had no standing to challenge the appointment of the guardian ad litem, and waived any right to claim impropriety on any issue by going to plea and disposition without objection or motion and then waiting several months until the psychological evaluation was received to raise the issues herein contained thereby waiving any defect which allegedly exist, this Court must address the Motion for Recusal since there can be no waiver of improper conduct or the appearance of improper conduct by the bench which might in any way bring into question the objectivity of the trier of fact and law. The respondent mother had the right to bring the instant motion even though she lacked standing to challenge the underlying actions of the Court. Having brought the motion, however, for all of the reasons stated herein, the Motion for Recusal is denied.
This case is returned to the Superior Court for Juvenile Matters at Montville. All outstanding motions are reserved for that Court.
Mack, J. CT Page 5868