### IN RE NYASIA H.*
### (AC 35647)

Robinson, Bear and Pellegrino, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 9—officially released September 27, 2013**

*Joshua Michtom*, assistant public defender, for the appellant (respondent father).

*Benjamin Zivyon*, assistant attorney general, with whom were *Carolyn Signorelli*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

BEAR, J. The respondent father, Steven H., appeals from the judgment of the trial court terminating his

---

** September 27, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

parental rights as to his minor child, Nyasia H.[1] On appeal, the respondent claims that the court erred when it denied a motion to disqualify Assistant Attorney General Carolyn Signorelli, the attorney representing the petitioner, the Commissioner of Children and Families, and that he is entitled to a new termination hearing because of this error. We conclude that the court did not abuse its discretion in denying the motion to disqualify Attorney Signorelli. Accordingly, we affirm the judgment of the trial court.[2]

The relevant factual allegations presented to the trial court in the motion to disqualify are as follows. Attorney Signorelli was the Chief Child Protection Attorney at the time this case was initiated against the respondent in 2010, and, in that capacity, she was in charge of all attorneys awarded contracts to represent children and indigent parents in actions initiated by the Department of Children and Families. The respondent previously had sent an e-mail directed to Attorney Signorelli requesting that she investigate this case in her capacity as Chief Child Protection Attorney.[3] On January 4, 2013,

[1] The court also terminated the parental rights of the mother of Nyasia H. (mother). She, however, is not a party to this appeal. Accordingly, we refer to Steven H. as the respondent.

[2] The attorney for the minor child adopted the brief of the petitioner on appeal.

[3] The e-mail, directed by the respondent to Attorney Signorelli, provided: "I am writing this e-mail because social services workers . . . [h]ave come to my house on June 21, 2010 looking for [the mother of Nyasia H.] My mother and I told them that she was not here. Basically they claimed that she did not go to a graduation, and we told them that whatever she does is not our concern. [T]heir next claim was that they saw a child playing upstairs so we told them that she was my niece and she was here to see her grandparents. [W]e brought the child to the door so they [would] know that she was not the child and mother they were looking for. [A]fter [that] the workers coerced a story and got me arrested claiming that [I] did not cooperate. I told them that [I] have no child in my care and [I] should not be subjected to shake downs whenever someone is not in their home. [T]he only connection I have with [the mother of Nyasia H.] [i]s a common child [N]yasia [H.] [T]hey wanted to go inside the house [but] we told them to get a warrant in order to do so. [A]fter I was unlawfully [arrested] they

the mother's attorney became aware that Attorney Signorelli, who had worked at the Office of the Attorney General prior to her appointment as Chief Child Protection Attorney, had returned to the Office of the Attorney General, and she had been assigned to the present case for the petitioner. It was not until March 2, 2013, however, that the mother's attorney learned that the respondent had sent an e-mail directed to Attorney Signorelli while she was the Chief Child Protection Attorney. The mother's attorney then immediately requested that the court consider disqualifying Attorney Signorelli on the

proceeded to force themselves into the house pushing and shoving my father. I [and] my family told them that [the mother of Nyasia H.] has her own [address] and they should go to her home. In a day or two I heard that my daughter was taken away from her mother. It was a hearsay case but they made it bigger than what it was. [A]fter all they searched my house illegally questioned a four year [old] child when they did find [the mother of Nyasia H.] they proceeded to go to her [house] and take the children. [I] know that these workers are sharing messages to third parties. My daughter has been sitting in a foster home I have not seen her in months and [I] have gone to a meeting I asked to [have a supervised] visit but I am hearing that [I] could not see her because of a protective order that is in place for when I and [the mother of Nyasia H.] had an argument.

"She is [four] years old she has not been away from her family in two months now. [Before] all this [I] and the mother had registered her to [a] charter school but [I] am hearing from the workers that she not be [attending] that school. My daughter [deserves] an [education] I don't see why she can't go to the school we chose for her. First they violated my human rights, they made up stories in order to [force] their way in my family's home now they are blocking me from seeing my daughter and now they want to deprive her of [an] education. This is hurting my daughter and in the end no one will be responsible for the effect this will have on her. I know that the mother would never put her kids in danger. [T]he reportee made up stories and there are other people involved in this. [T]here should be a [thorough] investigation of the workers. [T]his to me a racially motivated and harassment. [These people] are targeting minorities who have not the resources to defend themselves. [M]y daughter does not belong in a foster home. I am attending groups and domestic violence programs as well as sound community to better myself and to be effective in my family's life. I have proposed that my mother should become her custodial parent . . . [but one of the worker's] refuses. [T]hey want my mother to become a foster parent. Instead of the child living in foster care she should be with her family. I want this complaint to be investigated and confidential."

basis of rules 1.7, 1.9, 1.10 and 1.11 of the Rules of Professional Conduct.[4]

The court heard argument on the motion on March 4, 2013, at which time the respondent verbally supported[5] the mother's motion to disqualify Attorney Signorelli.[6] Although in his brief the respondent appears to fault the court for not taking evidence at this hearing, there is nothing in the record to indicate that the respondent or the mother's attorney ever requested an evidentiary hearing on the matter, much less that the court denied such a request. Following the argument of counsel, the court denied the motion to disqualify. The trial proceeded, and the court rendered judgment terminating the parental rights of the respondent and the mother on March 28, 2013. The respondent then filed the present appeal.

On appeal, the respondent claims that the court erred in denying the motion to disqualify Attorney Signorelli because of the appearance of impropriety[7] and because

---

[4] On appeal, however, the respondent relies only on rule 1.11 (a) (2) of the Rules of Professional Conduct as a basis for Attorney Signorelli's disqualification.

[5] The respondent father did not file a separate motion to disqualify Attorney Signorelli, nor did he join in and sign the mother's motion. The petitioner, however, does not advance any arguments on appeal relating to these deficiencies.

[6] Although the motion was heard on March 4, 2013, it erroneously bears a date of March 21, 2013. The petitioner alleges in her brief that the motion was submitted to the court on Saturday, March 2, 2013; that assertion is not contested by the respondent.

[7] "Unlike Canon 9 under the Code of Professional Responsibility . . . the Rules of Professional Conduct do not expressly state that a lawyer should avoid the appearance of impropriety. Even when Canon 9 was applicable, we rejected the notion that an appearance of impropriety was alone a sufficient ground for disqualifying an attorney. . . . [T]he appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order except in the rarest of cases. . . . Although considering the appearance of impropriety may be part of the inherent power of the court to regulate the conduct of attorneys, it will not stand alone to disqualify an attorney in the absence of any indication that the attorney's representation risks violating the Rules of Professional Conduct." (Citations omitted; inter-

her representation of the petitioner was a violation of rule 1.11 of the Rules of Professional Conduct. He further argues that he is entitled to a new hearing on the termination of his parental rights due to the court's error in denying the motion. We are not persuaded.

"The standard of review for determining whether the court properly denied a motion to disqualify counsel is an abuse of discretion standard. The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court. . . . In its execution of this duty, the Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest. . . . In determining whether the Superior Court has abused its discretion in denying a motion to disqualify, this court must accord every reasonable presumption in favor of its decision. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Smigelski* v. *Kosiorek*, 138 Conn. App. 728, 739–40, 54 A.3d 584 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

"Disqualification of counsel is a remedy that serves to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information. . . . In disqualification matters, however, we must be solicitous of a client's right freely to choose his counsel . . . mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and may lose

nal quotation marks omitted.) *Bergeron* v. *Mackler*, 225 Conn. 391, 399–400, 623 A.2d 489 (1993) (court improperly disqualified plaintiffs' counsel on basis of appearance of impropriety without exploring whether representation violated Rules of Professional Conduct); see *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 726–27, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001).

the benefit of its longtime counsel's specialized knowledge of its operations. . . . The competing interests at stake in the motion to disqualify, therefore, are: (1) the [respondent's] interest in protecting confidential information; (2) the [petitioner's] interest in freely selecting counsel of [her] choice; and (3) the public's interest in the scrupulous administration of justice." (Citations omitted; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas,* 62 Conn. App. 711, 725, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001).

In the present case, after counsel argued the motion to disqualify Attorney Signorelli, the court issued its ruling from the bench. The court found that the respondent's e-mail directed to Attorney Signorelli did not disclose any substantial and confidential matters, that all the information provided by the respondent in the e-mail was a matter of record, and that Attorney Signorelli had not been acting in an adversarial role with the respondent, nor had she been representing him. The court also stressed that the case had been pending for 987 days, with the children having been in placement since June, 2010,[8] and that trial was due to start that very day. On these bases, the court denied the motion.

On appeal, the respondent specifically argues that Attorney Signorelli's representation of the petitioner in this case created the appearance of impropriety and violated the section of rule 1.11 (a) that provides: "Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government . . . (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appro-

---

[8] Nyasia H. was not the only child to whom these proceedings related. She is, however, the only child relevant to this appeal.

priate government agency gives its informed consent, confirmed in writing, to the representation." Assuming, without deciding, that this rule could be implicated under the facts of this case, we, nonetheless, are not persuaded by the respondent's argument.

Pursuant to statute, Attorney Signorelli, as the Chief Child Protection Attorney, was responsible for managing a system of legal representation, where such representation was handled by not-for-profit legal services agencies and private independent contract attorneys who, themselves, provided direct legal services to clients. See General Statutes (Rev. to 2010) § 46b-123d, repealed by Public Acts 2011, No. 11-51, § 223, effective July 1, 2011. Under § 46b-123d, the role and duties of the Chief Child Protection Attorney were administrative in nature, and thus she did not personally or substantially participate in or provide any legal representation in individual cases. The rule of professional conduct that the respondent complains was violated in this case, rule 1.11 (a) (2), is addressed to public officers or employees of the government who have "participated personally and substantially" in a matter. The court found that Attorney Signorelli did not participate personally and substantially in the respondent's case and that there was no basis on which to disqualify her. On the basis of the court's findings, the record before us, and the clearly defined statutory scope of the Chief Child Protection Attorney's role and duties, we are not persuaded that the court abused its discretion or that the denial of the motion to disqualify amounted to a manifest injustice. Accordingly, we cannot conclude that the respondent is entitled to a new trial on the petition to terminate his parental rights.

The judgment is affirmed.

In this opinion the other judges concurred.